UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASHLEY DONNELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00107-JPH-DLP |
| | ) | |
| BALL STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Ashley Donnelly alleges that as an Associate Professor of Telecommunications at Ball State University she was paid less than male counterparts for performing the same work under the same conditions.  Dr. Donnelly has sued Ball State under the Equal Pay Act alleging that her gender is the reason that she was paid less.  Ball State has filed a motion for summary judgment.  Dkt. [62].  Because Dr. Donnelly cannot establish a prima facie case, Ball State's motion for summary judgment is **GRANTED**.

## I.

### Facts and Background

Because Ball State has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. Ball State's Telecommunications Department

The Telecommunications Department ("the Department") is part of the College of Communication Information and Media at Ball State.  Dkt. 63-1 at 3 (Pollard Dep. 7:1–6).  The college is one of seven colleges at the university.  *Id.* (7:7–8).  There are four ranks within the Department: Instructor, Assistant Professor, Associate Professor, and Full Professor.  Dkt. 63-2 at 2 (Pollard Decl. ¶ 6).  When the events relevant to this lawsuit occurred, Tim Pollard was the Chair of the Department and an Associate Professor.  Dkt. 63-1 at 3 (Pollard Dep. 7:9–20).

### B. The Director of Digital Storytelling Position

The Department has a master's program in digital storytelling.  Dkt. 63-4 at 3 (Brookey Dep. 7:18–19).  The head of the program is called the Director of Digital Storytelling (also known as the "Director of Graduate Studies" or "Director").  *Id.* (8:13–18).  The department chair selects the Director.  Dkt. 63-2 at 6 (Ex. A).  A faculty member serves as the Director in addition to his or her other responsibilities; it is not a stand-alone position.  *Id.* at 3 (Pollard Decl. ¶ 14).  The Director receives a one-course release and is only required to teach two classes per semester[1].  *Id.* at 2 (¶ 10).

### C. 2013-2014 Opening for "Director of Graduate Studies and Associate/Full Professor, Department of Telecommunications"

For the 2013-2014 academic year, Ball State conducted a national search, dkt. 63-1 at 5 (Pollard Dep. 15:14–25), to fill the position of "Director of

---

[1] The standard class load for tenured faculty is three classes per semester.  Dkt. 63-1 at 4 (Pollard Dep. 10:9–11).

Graduate Studies and Associate/Full Professor, Department of

Telecommunications," dkt. 78-2.  It was a tenure-track faculty position.  Dkt.

78-2.  Responsibilities included:

> serve as Director of Graduate Studies for the master's degree in
> digital storytelling; manage all applications, supervise theses and/or
> creative projects, and promote the program to external audiences;
> potential 2-2 semester load for teaching digital or emerging media
> theory, research, and/or critical analysis; use of social and mobile
> media, interactivity web, etc.; research; service.

*Id.*  Dr. Donnelly served as the Chairperson of the Search Committee.  Dkt. 69-

1 at 2 (Donnelly Decl. ¶ 11).  Ball State offered, and Robert Brookey accepted,

the position of Director of Graduate Studies and Full Professor.  Dkt. 63-1 at

15 (Pollard Dep. 56:19–23).

Dr. Brookey's appointment letter stated that he would be appointed

"Professor of Telecommunications" and would receive a salary base of $89,000.

Dkt. 73-2 at 3.  Dr. Brookey was also credited with four years towards tenure,

dkt. 63-1 at 16 (Pollard Dep. 59:12–14), and negotiated teaching only one

course for his first semester and two courses for his second semester, dkt. 63-4

at 4 (Brookey Dep. 12:1–13).

### D. Dr. Brookey's Position as Director of Digital Storytelling and Full Professor of Telecommunications

During his first year at Ball State, Dr. Brookey had responsibilities in

addition to teaching classes.  He reviewed applications for the Fulbright

Program, served on the Graduate Advisory Council for the Associate Dean,

served on the Diversity Committee, and served on the Department's Personnel

Committee.  Dkt. 63-4 at 5 (14:5-13; 19–24).

During his second year at Ball State, Dr. Brookey received the same benefit regarding his teaching obligations, teaching only one course for the first semester and two courses for the second semester.  *Id.* (13:11–14).  He received additional compensation for serving as the interim associate dean of the graduate school.  *Id.* at 6 (18:5–12).

At the end of his fourth year at Ball State, in 2017, Dr. Brookey relinquished the duties of Director and became the Chair of the Department of Telecommunications.  Dkt. 63-4 at 6–7 (Brookey Dep. 20:23–21:7).

**E. Dr. Donnelly's Selection to Serve As Director of Digital Storytelling and Associate Professor of Telecommunications**

When the Director position opened for the 2017–2018 academic year, Dr. Pollard allowed all graduate faculty to apply for it.  Dkt. 63-1 at 8 (Pollard Dep. 27:12–14).  Dr. Donnelly applied for and was ultimately offered the position. *Id.* (28:1–4).  Prior to accepting the offer, Dr. Donnelly was informed that she would not receive additional compensation.  Dkt. 63-3 at 26 (Donnelly Dep. 98:11–20).  When Dr. Donnelly accepted the Director position, her salary was $71,724 per year.  *Id.* at 25 (94:15–20).  In July 2017, the President of Ball State notified Dr. Donnelly that her title had changed to Director of Digital Storytelling and Associate Professor of Telecommunications[2].  *Id.* at 26 (97:25– 98:6).  Under this new title, Dr. Donnelly received a reduced course load and taught two courses per semester.  *Id.* at 28 (105:22–106:22).

---

[2] As stated above, the Director of Digital Storytelling is the same position as the Director of Graduate Studies.

4

Dr. Donnelly brought this lawsuit, raising one claim against Ball State for compensation discrimination under the Equal Pay Act, 29 U.S.C. § 206(d)(1).  Dkt. 1.

## II.

### Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).

## III.

### Analysis

#### A. The Equal Pay Act

The Equal Pay Act (the "EPA") prohibits employers from paying men and women differently for the same work.  29 U.S.C. § 206(d)(1); *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016).  To establish a prima facie case under the

EPA, a plaintiff must show: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003) (citation omitted). If the plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to offer some gender-neutral factor that explains the difference in pay. *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018). The EPA "provides four exceptional circumstances when an employer has a permissible basis to pay an employee less than an employee of the opposite sex: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* (citing 29 U.S.C. § 206(d)(1)).

### B. Dr. Donnelly's EPA Claim

Ball State contends that Dr. Donnelly has not established a prima facie case under the EPA because she has not identified a suitable comparator. In response, Dr. Donnelly identifies Robert Brookey as "the most appropriate and applicable comparator."[3]  Dkt. 70 at 21.

Ball State contends that Dr. Brookey cannot be used as a comparator because he was a Full Professor and performed the additional duties and responsibilities of a Full Professor, while Dr. Donnelly was an Associate Professor. *Id.* at 20. Consequently, neither Dr. Brookey's salary nor Dr.

---

[3] Dr. Donnelly originally alleged that she was paid "significantly less than male employees of Ball State University working in the Telecommunications Department as Associate Professors." Dkt. 1 ¶ 5.

Donnelly's salary was linked to or based on duties related to the position of Director of Digital Storytelling. *See* dkt. 63-2 at 3 (Pollard Decl. ¶ 14); dkt. 63-1 at 15 (Pollard Dep. 54:22–55:1); dkt. 63-4 at 4, 5 (Brookey Dep. 12:1–7, 13:11–14); dkt. 73-1 at 9 (Lavery Dep. 73:3–6); dkt. 63-3 at 26 (Donnelly Dep. 98:11–20. Rather, Dr. Donnelly's salary was based on her rank and work as Associate Professor while Dr. Brookey's salary was based on his rank and work as Full Professor.

Dr. Donnelly argues that she has established her prima facie case because she held the same position that Dr. Brookey held—Director of Digital Storytelling—but was paid less. Dkt. 70 at 20–21. It's undisputed that Dr. Brookey was paid more when he was the Director than Dr. Donnelly was paid when she was the Director, and Ball State does not dispute that their work was performed under similar working conditions. The dispute centers on whether Dr. Donnelly has shown that in comparison to Dr. Brookey, she performed equal work requiring substantially similar skill, effort and responsibility. 29 U.S.C. § 206(d)(1); *Cullen*, 338 F.3d at 698.

**1. Common core of tasks associated with the Director position**

In determining whether two jobs are equal, the crucial inquiry is "whether the jobs have a common core of tasks, i.e., whether a significant portion of the two jobs is identical." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017). Here, Dr. Brookey and Dr. Donnelly

each held the position of "Director of Digital Storytelling."  Dkt. 63-4 at 3 (Brookey Dep. 8:13–18); dkt. 63-3 at 26 (Donnelly Dep. 97:25–98:6).

While the designated evidence does not reveal material differences between the responsibilities specific to the Director position when Dr. Brookey was the Director compared to when Dr. Donnelly was the Director, neither professor's job duties were limited to the specific duties of the Director position. Rather, when Dr. Brookey served as the Director, he was a Full Professor in the Department of Telecommunications responsible for teaching classes and performing the other duties and responsibilities of a Full Professor.  When Dr. Donnelly served as the Director, she was an Associate Professor in the Department of Telecommunications responsible for teaching classes and performing the other duties and responsibilities of an Associate Professor.  So even if they performed the same tasks specific to the role of Director during their respective terms as Director, that does not determine whether their jobs were equal during their respective terms as Director.

## 2. Additional tasks that make the job of Full Professor "substantially different" from the job of Associate Professor

If the plaintiff establishes a "common core" of tasks, the Court must ask whether any additional tasks make the jobs "substantially different." *Cullen*, 338 F.3d at 698.  In making this determination, the Court "looks to the actual job duties performed by each employee, not to his or her job description or title." *David*, 846 F.3d at 230.  Three elements are considered in comparing job duties: skill, effort and responsibility.  29 U.S.C. § 206(d)(1); *Cullen*, 338 F.3d

at 698.  "Each of these elements must be met individually to establish a prima

facie case."  *Cullen*, 338 F.3d at 698 (citing 29 C.F.R. § 1620.14).  "Skill

includes considerations such as experience, training, education, and ability."

29 C.F.R. § 1620.15(a); *Cullen*, 338 F.3d at 699.  "The crucial comparison is

between positions, not individuals."  *Toomey v. Car-X Assocs. Corp.*, No. 12 C

4017, 2013 WL 5448047, at *5 (N.D. Ill. Sept. 30, 2013) (citing *Cullen*, 338

F.3d at 698).

Here, the positions of Full Professor and Associate Professor do not

require equal levels of skill or responsibility.  It is undisputed that the positions

of Full Professor and Associate Professor are not the same; the position of Full

Professor is a "step up" and carries with it more responsibilities.  Dkt. 63-1 at

15 (Pollard Dep. 55:2–25); dkt. 63-3 at 27 (Donnelly Dep. 101:2–12).  As a Full

Professor, Dr. Brookey's duties included "research, teaching, and some

administrative work."  Dkt. 73-1 at 9 (76:3–12).  The designated evidence

demonstrates that Dr. Brookey taught classes and performed service work

commensurate with the heightened expectations that accompany the position

of Full Professor.  He reviewed applications for the Fulbright Program, served

on the Graduate Advisory Council for the Associate Dean, served on the

Diversity Committee, served on the Department's Personnel Committee, and

served as a Ph.D. mentor on the Ph.D. Pathways Program.  Dkt. 63-4 at 5

(Brookey Dep. 14:5–23).[4]

---

[4] Dr. Donnelly contends that there is a genuine issue of material fact because Dr. Pollard
testified that the Director position was a "faculty" position while Dr. Lavery testified that it was
a "service" position.  Dkt. 70 at 25.  However, there is no conflict. The Director of Graduate

Because the positions of Full Professor and Associate Professor do not require equal levels of skill and responsibility, Dr. Donnelly cannot establish a prima facie case.  *See Cullen*, 383 F.3d at 700; *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011) ("employees of higher rank commonly have different job duties or performance standards"); *see also Lowery v. Univ. of Houston--Clear Lake*, 82 F. Supp. 2d 689, 696 (S.D. Tex. 2000) ("Plaintiff cannot use [Full Professor] as a proper basis for comparison because . . . a Full Professor . . . does not share comparable duties and responsibilities with Associate Professors.").

Dr. Donnelly argues that there is a triable issue as to why Dr. Brookey was paid more than Dr. Donnelly.  Dkt. 70 at 22.  But there is no dispute that Dr. Brookey was a Full Professor and that Dr. Donnelly was an Associate Professor.  As discussed above, these positions do not require equal levels of skill and responsibility.  Moreover, the designated evidence shows that the Director position was not a stand-alone paid position with monetary compensation beyond the faculty member's base salary.  Dkt. 63-2 at 3 (Pollard Decl. ¶ 14).  The only compensation listed for the Director position is a course release, *id.*; dkt. 63-1 at 15 (Pollard Dep. 54:22–55:1), and that is the only additional compensation that Dr. Brookey received for serving as Director, dkt. 63-4 at 4, 5 (Brookey Dep. 12:1–7, 13:11–14); dkt. 73-1 at 9 (Lavery Dep. 73:3–

---

Studies and Associate/Full Professor opening for the 2013–2014 academic year was a tenure-track faculty position.  Dkt. 78-2.  Responsibilities included serving as the Director of Graduate Studies.  *Id.*  Furthermore, Dr. Pollard and Dr. Lavery testified that the Director position was not compensated.  *See* dkt. 73-1 at 9 (76:3–14); dkt. 63-1 at 15 (Pollard Dep. 54:22–55:1); dkt. 63-2 at 3 (Pollard Decl. ¶ 14).

6).  And Dr. Donnelly knew when she took the position of Director of Digital Storytelling that the only additional compensation would be a reduced course load.  Dkt. 63-3 at 26 (Donnelly Dep. 98:11–20).

Dr. Donnelly contends that Dr. Brookey admitted he was paid a salary for being the Director, or at least his salary took that role into account.  Dkt. 70 at 10 (citing dkt. 63-1 at 5–6 (Pollard Dep. 15:9–16:25, 17:1–18:2)).  But Dr. Brookey's offer letter stated that his appointment was as "Professor of Telecommunications at Ball State" and did not mention the Director position. Dkt. 73-2 at 3.  Dr. Pollard, Chair of the Department, testified that Dr. Brookey was hired for "a tenure-track professor position" and the salary was assigned to that position.  *See* dkt. 63-1 at 5 (Pollard Dep. 15:14–25).  Dr. Pollard further testified that part of Dr. Brookey's responsibilities "would be director of graduate studies, which would be a one-course release."  *Id.* at 6 (17:20–24).[5] So the designated evidence shows that the course release was compensation for the Director role, while the salary was tied to Dr. Brookey's position as a Full Professor.  While Dr. Donnelly and Dr. Brookey may have performed the same duties related to the position of Director of Digital Storytelling, each was separately responsible for performing the duties and responsibilities commensurate with their respective positions of Associate Professor and Full Professor.  These positions and the duties required of them were not equal, so Dr. Donnelly has not established a prima facie case.

---

[5]  Dr. Brookey also negotiated an additional course release.  Dkt. 63-4 at 4 (Brookey Dep. 12:1–7).  He testified that he told Dr. Donnelly that there was no additional compensation for the Director position except for the course releases.  *Id.* at 8 (25:1–6).

## IV.

## Conclusion

Ball State's motion for summary judgment, dkt. [62], is **GRANTED**.  Final

judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/25/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
bburgan@taftlaw.com

Robert F. Hunt
THE LAW OFFICE OF ROBERT J. HUNT, LLC
rfh@indianawagelaw.com

Robert J. Hunt
LAW OFFICE OF ROBERT J. HUNT, LLC
rob@indianawagelaw.com